```
___ FILED      ___ ENTERED
___ LODGED     ___ RECEIVED

      JUN 16 2016

         AT SEATTLE
   CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                       DEPUTY
```

# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JASPER K. BELL,<br><br>Defendant. | NO. CR16-176RSL<br><br>**PLEA AGREEMENT** |

The United States of America, by and through Annette L. Hayes, United States Attorney for the Western District of Washington, and Todd Greenberg, Assistant United States Attorney for said District, Defendant, Jasper K. Bell, and his attorney, Nancy Tenney, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c):

1. **Waiver of Indictment.** Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to the charge brought by the United States Attorney in an Information.

2. **The Charge.** Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enter a plea of guilty to the charge of Threatening a Federal Official, in violation of Title 18, United States Code, Section 115(a)(1)(B) and (b)(4), contained in the Information.

PLEA AGREEMENT/BELL - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

By entering a plea of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that, before entering his guilty plea, he will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

3. **Elements of the Offense**. The elements of the offense of Threatening a Federal Official to which Defendant is pleading guilty, are as follows:

a. First, the defendant threatened to assault a United States official; and

b. Second, the defendant acted with the intent to impede, intimidate, or interfere with such official while engaged in the performance of official duties, or with the intent to retaliate against such official on account of the performance of official duties.

4. **The Penalties**. Defendant understands that the statutory penalties applicable to the offense of Threatening a Federal Official are as follows: a maximum term of imprisonment of up to ten (10) years, a fine of up to two hundred and fifty thousand dollars ($250,000), a period of supervision following release from prison of up to three (3) years, and a mandatory special assessment of one hundred dollars ($100). If a probationary sentence is imposed, the probation period can be for up to five (5) years. Defendant agrees that the special assessment shall be paid at or before the time of sentencing.

Defendant understands that supervised release is a period of time following imprisonment during which he will be subject to certain restrictive conditions and requirements. Defendant further understands that, if supervised release is imposed and he violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that, as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

restitution to any victim of the offense, as required by law. Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Statement of Debtor form as requested by the United States Attorney's Office.

5. **Rights Waived by Pleading Guilty.** Defendant understands that, by pleading guilty, he knowingly and voluntarily waives the following rights:

    a. The right to plead not guilty and to persist in a plea of not guilty;

    b. The right to a speedy and public trial before a jury of his peers;

    c. The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for him;

    d. The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

    e. The right to confront and cross-examine witnesses against Defendant at trial;

    f. The right to compel or subpoena witnesses to appear on his behalf at trial;

    g. The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

    h. The right to appeal a finding of guilt or any pretrial rulings.

6. **United States Sentencing Guidelines.** Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code,

Section 3553(a), including: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the defendant; (6) the need to provide the defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

    a.    The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

    b.    After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

    c.    The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

    d.    Defendant may not withdraw his guilty plea solely because of the sentence imposed by the Court.

    7.    **Ultimate Sentence.** Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

//
//
//
//
//

8. **Statement of Facts**. The parties agree on the following facts. Defendant admits he is guilty of the charged offense:

> During mid-April 2016, Jasper Bell wrote at least three letters to United States Congressman McDermott's Seattle office, complaining about the manner in which Bell perceived the Congressman to be carrying out his duties as a "super delegate" in relation to the upcoming Democratic National Convention. Specifically, Bell complained in the letters that the Congressman was "tak[ing] his voice away" by supporting a different candidate than Bell supported, and that the Congressman was thereby ignoring the results of the Washington State Democratic caucus.
>
> Throughout the next two weeks, Bell placed numerous telephone calls to Congressman McDermott's Seattle office, and visited the office on multiple occasions, demanding an in-person meeting with the Congressman to discuss his complaints. Bell's behavior in this regard culminated with the events of April 22, 2016.
>
> On April 22, 2016, between approximately 12:00 p.m. and 12:50 p.m., Bell placed a total of 17 telephone calls to Congressman McDermott's Seattle office and six additional calls to his Washington, D.C. office.
>
> During one of the phone calls to the Seattle office, Bell spoke to a staff member who answered the phone. Bell made angry remarks about the fact that protesters had been arrested outside of Congressman McDermott's office the day before. Bell became increasingly animated during the call. Bell ultimately stated, "Tell me where he fucking lives," referring to Congressman McDermott, and threatened, "I will cut his motherfucking tongue out."
>
> During another call on April 22, 2016, Bell spoke to a Seattle staff member and demanded to know Congressman McDermott's home address and telephone number. Bell also stated, "I will continue to call until he speaks to me – write that in the message you fucking bitch."

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

A few minutes later, Bell called Congressman McDermott's office in Washington, D.C. According to the staffer who answered the phone, Bell stated, "I am going to track him down after he retires and he won't be safe."

At 12:55 p.m., Bell went to Congressman McDermott's Seattle office. The doors to the office suite were locked. According to witnesses, Bell began pounding on the glass doors and was screaming things such as, "Let me in!" and "You have to represent me!" Staff members inside the office felt their offices shake due to Bell's pounding on the glass doors. Staff members called the Seattle Police Department, and officers responded to the scene. By the time the officers arrived, Bell had departed the area.

A few minutes later, Bell called the Congressman's Seattle office again. A police officer answered the phone and spoke to Bell. The officer asked Bell whether he thought it was appropriate to threaten a United States Congressman. Bell replied with words to the effect, "Yes, I felt it was appropriate because Jim McDermott is silencing thousands of people's voices!"

Bell was arrested later on April 22nd, at approximately 8:15 p.m. Bell waived his *Miranda* rights and spoke with police officers. During the interview, Bell admitted that he had threatened Congressman McDermott and that his motivation for making the threat was to influence the Congressman with respect to the carrying out of his duties as a "super delegate," and in retaliation for the manner in which the Congressman was carrying out those duties.

The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the United States or Defendant at the time of sentencing, and that the factual statement contained herein is not intended to limit the facts that the parties may present to the Court at the time of sentencing.

9. **Sentencing Factors.** The parties agree that the following Sentencing Guidelines provisions apply to this case:

A base offense level of 12, pursuant to USSG § 2A6.1(a)(1);

A six-level upward adjustment because the victim of the offense was a government official and the offense of conviction was motivated by such status, pursuant to USSG § 3A1.2(b).

The United States acknowledges that if Defendant qualifies for an acceptance of responsibility adjustment pursuant to USSG § 3E1.1(a), and if the offense level is sixteen (16) or greater, his total offense level should be decreased by three (3) levels pursuant to USSG § 3E1.1(a) and (b), because he has assisted the United States by timely notifying the authorities of Defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree they are free to present arguments regarding the applicability of all other provisions of the United States Sentencing Guidelines. Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range..

10. **Sentencing Recommendation.** Defendant may recommend any sentence that Defendant wishes to recommend. The United States agrees that it will recommend a sentence of imprisonment of not greater than one year. Except as otherwise provided in this plea agreement, the parties are free to present arguments regarding any other aspect of sentencing.

Defendant understands that these recommendations are not binding on the district court and the district court may reject the recommendations and may impose any term of imprisonment up to the statutory maximum penalties authorized by law. Defendant further understands that he cannot withdraw his guilty plea simply because of the sentences imposed by the district court in either case.

11. **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Agreement that are based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation. In this regard, Defendant recognizes the United States may have agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

12. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that, if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence. Defendant agrees not to oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement. Defendant also agrees that, if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges in the Indictment that were previously dismissed and any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of his confinement, (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services

Officer, Probation Officer, or Court), the United States is free under this Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the plea agreement.

13. **Waiver of Appeal.** As part of this Plea Agreement and on the condition that the Court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) that is determined by the Court at the time of sentencing, Defendant waives to the full extent of the law:

a. any right conferred by Title 18, United States Code, Section 3742 to appeal the sentence, including any restitution order imposed; and

b. any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation.

Furthermore, this waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. 2241, to address the conditions of confinement or the decisions of the Bureau of Prisons regarding the execution of the sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

14. **Voluntariness of Plea.** Defendant agrees that he has entered into this Plea Agreement freely and voluntarily and that no threats or promises, other than the promises

contained in this Plea Agreement, were made to induce Defendant to enter his plea of guilty.

15. **Statute of Limitations.** In the event this Agreement is not accepted by the Court for any reason, or Defendant has breached any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

16. **Completeness of Agreement.** The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties. This Agreement binds only the United States Attorney's Office for the Western District of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this 16th day of June, 2016.

JASPER K. BELL
Defendant

NANCY TENNEY
Attorney for Defendant

TODD GREENBERG
Assistant United States Attorney